UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT L. WALKER<br>Plaintiff, | : <br> : <br> : | PRISONER CASE NO.<br>3:17-cv-1519 (JCH) |
| v. | : <br> : | |
| AIMEE GRIFFIN, et al.,<br>Defendants. | : <br> : <br> : | SEPTEMBER 26, 2017 |

**INITIAL REVIEW ORDER AND RULING ON MOTION TO APPOINT COUNSEL**

On September 8, 2017, the plaintiff, Vincent L. Walker ("Walker"), an inmate currently housed at MacDougall-Walker Correctional Institution in Suffield, CT, filed a Complaint pro se pursuant to section 1983, title 42 of the United States Code against Captain Aimee Griffin, Lieutenant Steven Edwin, Correction Officer Timothy Titus, and Correction Officer Matthew Fryer. Walker seeks monetary relief for their use of excessive force against him. All four defendants are employees of the Connecticut Department of Correction, but Walker does not specify whether he is suing them in their individual or official capacities. Walker has also filed a Motion to Appoint Counsel to represent him. Mot. to Appoint Counsel [Doc.#3]. This court granted his Motion to Proceed in forma pauperis on September 13, 2017. For the following reasons, his Complaint will be dismissed in part, and his Motion to Appoint Counsel will be denied without prejudice.

**I.      STANDARD OF REVIEW**

Pursuant to section 1915A, title 28 of the United States Code, this court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous

or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II.     FACTUAL ALLEGATIONS[1]

On October 31, 2016, at approximately 5:30 p.m., while housed at Willard-Cybulski Correctional Institution in Enfield, CT, Walker was called down for urinalysis testing inside the Admissions and Processing ("A&P") room. Complaint ("Compl.") (Doc. No. 1) at 5. When Walker entered the A&P room, Correction Officer Fryer asked him if he "like[d] to assault staff," to which Walker responded, "That was in my younger days." Id. Walker was then placed into a separate holding cell than the other inmates in the A&P room. Id.

---

[1] For the purposes of an Initial Review Order, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).

Walker informed Fryer that he needed to use the bathroom, and Fryer retrieved a cup for Walker's urine.  Id.  Before he handed the cup to Walker, Fryer wiped the inside of the cup with a cloth.  Id.  Walker then told Fryer that he was not going to urinate in that cup because he saw Fryer wiping the inside of it.  Id.  Fryer then left and came back to the holding cell with a cup, but Walker does not know if it was the same cup as before or a different one.  Walker "produced a clear urine" in the cup that Fryer gave him and handed it back to Fryer, who took it to the Correction Officer's deck.  Id.

Around 7:00 p.m., Fryer and Correction Officer Titus came to Walker's holding cell to read him his urinalysis results.  Id. at 6.  At the time, Walker was the only inmate in the cell.  Fryer showed Walker a cup of "dark urine."  Id.  Once he saw the color of the urine, Walker said to Fryer and Titus, "That's not my piss."  Id.  The officers told him that he had tested positive for T.H.C. and that he was "going to go down for it" unless he gave them an explanation.  Id.  Walker told the officers that he did not have any information for them.  Id.

Titus instructed Walker to strip, but Walker refused, stating, "I am not doing nothing until you call a lieutenant."  Id.  Titus then became aggressive, pulled out his pepper spray, and yelled, "You gonna do whatever I tell you!"  Walker replied, "I ain't doing shit until I see a lieutenant and a camera in here."  Id.  He told Titus, "since it look[s] like you want to spray me, I am going [to] sit down to show y'all [that] I am not a threat."  Id.  Walker then sat down in a chair in the holding cell.  Id.

Once Walker sat down, Titus and Fryer rushed at him and attempted to stand him up.  Id.  Walker started to pull away, which prompted Titus to spray him with his pepper spray.  Id.  Walker then fell to the floor and lied face down.  Id.  While lying face

3

down on the floor, Titus started punching Walker while yelling, "Cuff up!  Cuff up!"  Walker told Titus that he would "cuff up" once Titus stopped him hitting him.  Id.  Eventually, Titus stopped punching Walker, and Walker secured his wrists.  Id.  Titus then stuck his finger in the side of Walker's neck.  Id.  A code was then called, and Walker was taken to the shower room for decontamination.  Id.

After decontamination, Walker was taken to medical and evaluated for any injuries.  Medical staff informed him that he had swelling on his left eyebrow.  Id.

### III. DISCUSSION

#### A. Request for Relief

In his Complaint, Walker requests "money damages for mental, emotional, and physical injury in the amount of $150,000."  Compl. at 6.  Walker does not specify whether he is suing the defendants in their individual or official capacities.  To the extent he seeks monetary damages against the defendants in their official capacities, those claims are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 170 (1985); Quern v. Jordan, 440 U.S. 332, 342 (1979).  Because Walker is only seeking monetary relief as a remedy, all claims against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

#### B. Eighth Amendment Excessive Force

Walker is suing all four defendants for excessive force, in violation of his Eighth Amendment protection against cruel and unusual punishment.  To establish a claim of excessive force under the Eighth Amendment, the prisoner must satisfy a subjective and objective component.  See Sims v. Artuz, 230 F.3d 14, 20–21 (2d Cir. 2000).

The subjective component requires a showing that an officer's use of excessive force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" Wilkins v. Gaddy, 559 U.S. 34, 40 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 9 (1992).  The objective component focuses on the harm done in light of contemporary standards of decency, but the amount of harm that must be shown depends on the nature of the claim.  See Sims, 230 F.3d at 21; Banks v. Cty. of Westchester, 168 F. Supp.3d 682, 688 (S.D.N.Y. 2016).  Some degree of injury is ordinarily required.  See Banks, 168 F. Supp.3d at 688.  However, a prisoner does not have to show that he sustained a significant injury in order to prevail on an excessive force claim.  "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (quoting Hudson, 503 US. at 4).  However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  Id. at 37 (quoting Hudson, 503 U.S. at 9); see also Sims, 230 F.3d at 22 (not every push or shove violates prisoner's constitutional rights).

In sum, a prisoner sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically . . . ."  Sims, 230 F.3d at 22.

Construed liberally, Walker's allegations sufficiently state a claim for excessive force against Titus and Fryer.  He alleges that they "rushed" at him, forcefully removed him from a chair, and assaulted him while he was lying face down on the floor of the holding cell.  He also alleges that Titus sprayed him with pepper spray and stuck his

5

finger in the side of his neck after he had secured his wrists for handcuffing. The court will, thus, permit Walker's excessive force claim to proceed against Titus and Fryer.

### C. Claims against Captain Griffin and Lieutenant Edwin

Walker also lists Captain Griffin and Lieutenant Edwin as defendants to this action, but he never mentions either of them in his factual allegations. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); see also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of respondeat superior does not suffice for claim of monetary damages under § 1983). A prisoner who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event. Wright, 21 F.3d at 501; Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003). "In addition, supervisory liability may be imposed where an official demonstrates gross negligence or deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." Wright, 21 F.3d at 501. The prisoner must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Because Walker does not allege how, if at all, Griffin or Edwin were personally involved

in the incident which caused his injuries, he cannot sue either of them for monetary damages.  Thus, his claims against Griffin and Edwin are dismissed.

## IV.     MOTION TO APPOINT COUNSEL (DOC. NO. 3)

On September 8, 2017, Walker filed a motion for this court to appoint counsel to represent him in his civil case.  Mot. to Appoint Counsel (Doc. No. 3).  In support of his Motion, Walker argues that (1) he cannot afford an attorney because he is incarcerated and (2) he has a viable Eighth Amendment claim against the defendants.  Id. at 5.  He acknowledges, however, that he has not spoken with any attorneys about handling his case pro bono.  Id. at 4.

"The court may request an attorney to represent any person unable to afford counsel."  42 U.S.C. § 1915 (e)(1).  "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ."  Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 204 (2d Cir. 2003).  The Second Circuit has held that, before the appointment of counsel is even considered, the indigent movant must establish that he is unable to obtain counsel.  Cooper v. A. Sargenti Co., 877 F.2d 170, 173 (2d Cir. 1989); Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).  If the movant satisfies that threshold requirement, the court must then consider the merits of the indigent movant's claim and determine "whether the [movant's] position seems likely to be of substance."  Hodge, 802 F.2d at 61.  If so, the court should then consider other factors bearing on the need for appointment including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the movant's apparent ability to present the case, and the complexity of the legal issues.  Id. at 61–62.

Because Walker has acknowledged that he has not made any efforts to contact counsel on his own to obtain pro bono representation, this court cannot conclude that he is unable to obtain counsel. Moreover, the present record, which consists only of a Complaint, is insufficient for this court to conclude that the appointment of counsel is warranted. Thus, Walker's Motion to Appoint Counsel is denied without prejudice subject to refiling at a later stage of the litigation.

## V.    CONCLUSION

(1) All claims against the defendants in their official capacities are dismissed pursuant to section 1915A(b)(2), title 28 of the United States Code. All claims against Captain Griffin and Lieutenant Edwin are dismissed. Walker's Eighth Amendment excessive force claim may proceed against defendants Titus and Fryer in their individual capacities. His Motion to Appoint Counsel (Doc. No. 3) is denied without prejudice to refile at a later stage of the litigation.

(2) The Clerk shall verify the current work addresses of defendants Titus and Fryer with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address(es) within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the court on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his individual capacity, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Titus and Fryer shall file their response to the Complaint, either an

answer or motion to dismiss, within **120 days** from the date of this Order. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 27, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

**SO ORDERED** this 26th day of September 2017 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge